IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-02422-MSK-BNB

JOSEPH BRADSHAW,
TIMOTHY TUTAMORE, and

      Plaintiffs,

v.

BOP DIRECTOR LAPPIN;
ADX WARDEN WILEY;
UNIT TEAM MEMBER COLLINS;
UNIT TEAM MEMBER SUDLOW;
UNIT TEAM MEMBER KNOX;
UNIT TEAM MEMBER MADISON;
UNIT TEAM MEMBER FOSTER;
UNIT TEAM MEMBER FINLAN
DR. LEYBA;
DR. NAFZIGER;
DR. AMIRKHAN
P.A. OSAGIE;
UNKNOWN MEDICAL STAFF;
UNKNOWN DENTIST;
UNKNOWN UTILIZATION COMMITTEE MEMBERS; and
UNKNOWN PROJECTED UNIT TEAM MEMBERS,

      Defendants.

---

## OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT
## TO DEFENDANTS

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion to

Consolidate Cases **(# 140)**; the Magistrate Judge's May 17, 2010 Recommendation **(# 203)** that

the Plaintiffs' Motion for Entry of Default **(# 152,** as supplemented **# 180, 181)** be denied, to

which no party has filed Objections; the Plaintiffs' Motion for Summary Judgment **(# 172)**, and

the Defendants' response **(# 249)**; and the Plaintiffs' Objections **(# 253)** to the Magistrate

Judge's June 30, 2010 Recommendation **(# 247)** that Defendant Leyba be dismissed from this

action without prejudice.[1]

## FACTS

According to the Amended Complaint **(# 205)**, both Plaintiffs are inmates of the Federal

Bureau of Prisons ("BOP").  Their claims in this case can be divided into two unrelated

categories.  The first set of claims involve allegations that Defendant Lappin has violated the

Plaintiffs' rights under the Inmate Financial Responsibility Program ("IFRP"), 28 C.F.R. §

545.10-11, by requiring them to develop a financial plan addressing payment of their restitution

obligations when 18 U.S.C. § 3572(d) provides that the authority to dictate restitution schedules

belongs exclusively to the sentencing court, not the BOP.  The Plaintiffs' *pro se* articulation of

claims is occasionally difficult to follow, but as best the Court can determine, the claims relating

to the IFRP allege: (i) that Mr. Bradshaw suffered some unspecified adverse "refusal

consequences" for refusing to allow Defendants Collins, Sudlow, and Madison to collect Mr.

Bradshaw's funds under the IFRP, resulting in a violation of the 8th Amendment to the United

States Constitution; (ii) that Mr. Bradshaw was improperly prevented from participating in the

"step down" process at the BOP's Administrative Maximum ("ADX") facility because he was

improperly accused of being in derogation of his IFRP obligations by Defendants Collins,

---

[1]Also pending are a variety of motions by the Plaintiffs relating to service on Defendant
Knox **(# 232, 233, 243, 263,** and **265)**, and a motion to compel **(# 226)** by Plaintiff Tuttamore,
which Mr. Tuttamore has since moved **(# 277)** to withdraw.  The Court withdraws the reference
to the Magistrate Judge with regard to each of these motions.  The Court grants the motion to
withdraw and the motion to compel is deemed withdrawn.  The motions concerning Defendant
Knox are denied as moot as discussed herein.

Sudlow, and Knox, thus violating his 8th Amendment rights; (iii) that in January 2007, Mr. Bradshaw was coerced by Mr. Knox to sign an IFRP payment plan, under penalty of additional restrictions on privileges, thus amounting to a violation of his 5th and 8th Amendment rights; (iv) that, as a result of his January 2007 signing of the IFRP plan, Defendants Collins, Sudlow, Foster, and Knox made quarterly deductions of $ 25 from Mr. Bradshaw's account, despite knowing that Mr. Bradshaw was placed on "no IFRP obligation" status as of March 27, 2007, thus violating his 5th and 8th Amendment rights; (v) that Mr. Bradshaw believes that the quarterly deductions from his prison account will continue throughout this litigation, amounting to ongoing violations of his 5th and 8th Amendment rights; and (vi) several claims by Mr. Tuttamore that are essentially similar to those asserted by Mr. Bradshaw with regard coercion to agree to IFRP plans and the subsequent improper collection of Mr. Tuttamore's funds pursuant to that improper IFRP plan.

The second strand of claims asserted in this action relate solely to Mr. Bradshaw and the medical care that the received while incarcerated. As to these claims: (i) Mr. Bradshaw alleges that Defendant Leyba demonstrated deliberate indifference to Mr. Bradshaw's medical needs, in violation of the 8th Amendment, in December 2006, when Defendant Leyba observed certain readings on an EKG test of Mr. Bradshaw that warranted immediate intervention, but instead delayed submitting Mr. Bradshaw's case to a cardiologist until February 2006; (ii) that in February 2006, the Defendant "Jane/John Doe Utilization Committee" manifested deliberate indifference to Mr. Bradshaw's medical needs by denying Mr. Leyba's request for a cardiac consultation for Mr. Bradshaw; (iii) that Defendant Wiley manifested deliberate indifference to Mr. Bradshaw's medical needs by failing to approve a grievance filed by Mr. Bradshaw that

sought a direction that Mr. Leyba and the Utilization Committee permit the cardiac consultation; (iv) that Defendant Lappin is culpable for the actions of the Defendants described above, as Mr. Lappin setting out a directive to BOP employees in 2005 directing them to "cut back on operations costs, including, but not limited to, cutting back on medical care and specialist assessments and treatment for inmates"; (v) that Defendant Nafzinger demonstrated deliberate indifference to Mr. Bradshaw's medical needs by refusing to carry out his promise of ordering a cardiac consultation for Mr. Bradshaw, after Mr. Bradshaw complained to Mr. Nafzinger of chest pains, shortness of breath, and other symptoms; (vi) that Mr. Nafzinger manifested deliberate indifference to Mr. Bradshaw's medical needs in 2007 by filing to carry out the BOP's guidelines for inmates diagnosed with hepatitis; (vii) that the Utilization Committee acted with deliberate indifference in denying Mr. Nafzinger's request that Mr. Bradshaw receive a liver biopsy; (viii) that Defendants Osagie and Amirkhan have manifested deliberate indifference to Mr. Bradshaw's medical needs by falsifying Mr. Bradshaw's medical records to justify denying treatment to him; (ix) that Mr. Wiley is culpable for the Utilization Committee's denial of the requested biopsy because Mr. Wiley denied Mr. Bradshaw's grievance on this issue by deferring to the discretion of the Utilization Committee; (x) that Mr. Lappin is responsible for the foregoing acts because of his 2005 cost-cutting memo; and (xi) that Defendant Jane/John Doe Health Services Division Director has implemented improperly strict criteria for hepatitis treatment, so as to ensure that prisoners such as Mr. Bradshaw do not receive medically appropriate treatment for their conditions.

The Court will discuss the details of each pending motion as part of its analysis.

<u>**ANALYSIS**</u>

**A. Standard of review**

Both Plaintiffs pursue this action *pro se*. As a result, the Court construes their filings

liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is

intended merely to overlook technical formatting errors and other defects in their use of legal

terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se*

status does not relieve the Plaintiffs of the duty to comply with the various rules and procedures

governing litigants and counsel or the requirements of the substantive law, and in these regards,

the Court will treat the Plaintiffs according to the same standard as counsel licensed to practice

law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San

Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

**B. Motion to Consolidate**

Mr. Bradshaw seeks to consolidate *Bradshaw v. Leyba,* D.C. Colo. Civ. Case No. 08-cv-

02542-PAB-KLM, with this action. Mr. Bradshaw explains that, in the 2008 action, he alleges

the same medical claims against the same Defendants as he does in this action. Mr. Bradshaw

explains that he filed the 2008 case to preserve his medical claims while appealing the dismissal

without prejudice of those claims in this action. The Defendants have not filed any response to

this motion.

The Court finds that consolidation of the cases – more accurately, consolidation followed

by dismissal of the 2008 case as moot – is appropriate. Mr. Bradshaw acknowledges that the

claims in the 2008 case precisely duplicate those that are asserted here, and, for the time being,

those claims remain extant in this action. Mr. Bradshaw contends that he commenced the 2008

suit out of a concern that his statute of limitations on the medical claims would run before his appeal of their dismissal in this suit could be decided, but the Court of Appeals' reversal of the dismissal of those claims vitiates any statute of limitations concern; put differently, if the claims asserted in the 2008 action are timely in that case, then by definition, they would be timely in this earlier-filed action as well. Thus, there is no utility in having a separate case in which Mr. Bradshaw asserts claims that are identical to medical claims he asserts here.

Accordingly, the Court grants the motion to consolidate and consolidates *Bradshaw v. Leyba* with this case. Having thus consolidated the cases, there is no reason for the *Bradshaw v. Leyba* case to have any ongoing existence. Mr. Bradshaw admits that the claims in both cases are identical, so however go those claims in this action, so they would go in the *Leyba* case and vice-versa.[2] Thus, upon consolidation, the Clerk of the Court is directed to close the *Bradshaw v. Leyba* case, and all further adjudication of Mr. Bradshaw's medical claims will occur in this action. (To the extent that there are pending motions or other procedural matters in the *Bradshaw v. Leyba* case, the moving party shall refile that motion in this case within 14 days of this Order.)

### C. Recommendation regarding entries of default

The Plaintiffs filed several motions **(# 152, 180, 181)** seeking entry of default against various Defendants. By Recommendation dated May 17, 2010, the Magistrate Judge found that

---

[2]In this regard, the Court takes particular note of Judge Brimmer's March 11, 2010 ruling in the 2008 case, dismissing Mr. Bradshaw's medical claims against Defendant Lappin, on the ground that this Court has no personal jurisdiction over him, and against Defendant Wiley, on the ground that Mr. Bradshaw has failed to allege Mr. Wiley's personal participation in any deprivation. Upon consolidation of the cases, this Order operates to dismiss Mr. Bradshaw's medical claims against Defendants Lappin and Wiley in this action, for the same reasons stated by Judge Brimmer.

these motions sought default because the Defendants had not answered a proposed Amended Complaint that the Court had not yet granted the Plaintiffs leave to file, and thus recommended that these motions be denied. No party filed Objections to this Recommendation under Fed. R. Civ. P. 72. Where no party files objections to a Recommendation, the Court applies whatever standard of review to that Recommendation that it deems appropriate. *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir.1991). Here, the Court has reviewed the Recommendation under the otherwise applicable "clearly erroneous or contrary to law" standard of Rule 72(a) that would otherwise apply to a ruling that does not dispose of a claim or defense, and upon such review, finds no reason to disagree with the Magistrate Judge's findings or conclusions. Accordingly, the Court adopts the Recommendation and denies the Plaintiffs' motions for entry of default.

### D. Plaintiffs' Motion for Summary Judgment

#### 1. Background

The Plaintiffs move for summary judgment (**# 172**) on their IFRP-related claims. In response,[3] the Defendants do not dispute most of the operative facts alleged by the Plaintiff with regard to how the IFRP operates, but the Defendants do dispute certain critical facts – most notably, allegations by both Plaintiffs that Defendant Knox told them that they would not be permitted to participate in the "step down" program without participating in the IFRP.

The undisputed facts establish that the IFRP is a BOP program found at 28 C.F.R.

_____

[3]The Defendants' response appears to request that the Court grant summary judgment to Defendant Lappin on all of Mr. Bradshaw's IFRP claims, on the grounds that Judge Brimmer previously determined that the Court lacks personal jurisdiction over Mr. Lappin for purposes of the medical claims. D.C. Colo. L. Civ. R. 7.1(C) provides that a request for relief shall not be included in a response to a motion, and must be made in a separate filing. Thus, the Court does not consider that portion of the Defendants' response that seeks affirmative relief for Mr. Lappin.

§545.10. It "encourages each sentenced inmate to meet his or her legitimate financial obligations." *Id.* An IFRP plan will typically require inmates to meet their financial obligations in the following order: (i) special assessments imposed under 18 U.S.C. §. 3013, (ii) court-ordered restitution, (ii) fines and court costs, etc. 28 C.F.R. § 545.11(a). Payments required under a plan will be a minimum of $ 25 per quarter, with higher amounts payable by inmates classified in higher-earning prison work programs. § 545.11(b). Participation in the IFRP is voluntary, but "at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility." § 545.10. Refusal of an inmate to participate will also result in an inmate losing certain privileges, including furloughs, access to certain work assignments, higher commissary spending limits, etc. § 545.11(d).

The Plaintiffs' IFRP claims here arise out of *U.S. v. Overholt*, 307 F.3d 1231, 1254-55 (10th Cir. 2002). There, the court sentencing the defendant imposed a restitution amount, requiring that "any amount not paid immediately shall be paid while in custody through the Bureau of Prisons' Inmate Financial Responsibility Program." The defendant appealed, arguing that the court's failure to impose a specific restitution payment schedule violated 18 U.S.C. §3664(f)(2), which states that the "[sentencing] court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." The 10th Circuit viewed the sentencing court's restitution order as "delegating the preparation of a payment schedule to the Bureau of Prisons," and concluded that it was plain error for the sentencing court to do so. 307 F.3d at 1255. After examining the statutory provisions, the court concluded that "we see no room for delegation by the district court with respect to payment

schedules for restitution," and remanded the case back to the sentencing court to establish a schedule for payment of restitution. *Id.* In reversing the earlier dismissal of the Plaintiffs' claims in this action, the 10th Circuit observed that, in light of *Overholt*, "it seems problematic to conclude that the BOP may assume for itself a responsibility that the district court is not permitted to delegate to it." *Bradshaw v. Lappin*, 320 Fed.Appx. 846, 849 (10th Cir. 2009) (unpublished).

### 2. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish

every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When the facts are undisputed, the Court can enter judgment for either party as compelled by the law. *See* Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 2720 ("[S]ummary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56.").

3. Analysis

The Plaintiffs' IFRP-related claims can themselves be divided into two categories. First, the Plaintiffs allege that, from mid-2006 to early-2007, the Defendants placed them on "refuse" status under the IFRP, resulting in the Plaintiffs being deprived of a variety of privileges, most significantly, the opportunity to participate in the ADX "step down" program. Second, the

Plaintiffs allege that, beginning in early 2007, they were "coerced" into signing agreements to participate in the IFRP program and, since then, have had $ 25 quarterly payments deduced from their inmate trust accounts. Because each category of claim gives rise to a different analysis, the Court will address them separately, beginning with the claims premised upon the actual deductions from the Plaintiffs' accounts.

a. Claims relating to actual deductions of funds

The Plaintiffs' claims arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* crates a vehicle by which persons deprived of constitutional rights by the actions of federal officers can obtain redress; it is, for all practical purposes, a federal analogue to state-actor liability under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n. 2 (2006). Thus, to establish a *Bivens* claim, the Plaintiffs must show that each named Defendant deprived them of a right protected by the U.S. Constitution.

The Plaintiffs here cite to two constitutional provisions as supporting their claims relating to funds actually deducted from their trust accounts: (i) the 5th Amendment's protection against a deprivation of property occurring without due process, and (ii) the 8th Amendment's prohibition against cruel and unusual punishment. The Court summarily rejects any argument that the Defendants' conduct relating to the deducted funds can constitute an 8th Amendment deprivation. The 8th Amendment is violated by conditions of confinement that amount to a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). In other words, jail officials must ensure that inmates receive "reasonably adequate ventilation, sanitation, bedding, hygiene materials . . . hot and cold water, light, heat, and plumbing." *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980). The inmate

must show that the conditions pose a safety or health risk that exceeded that deemed acceptable under "evolving standards of decency." *Craig*,164 F.3d at 495-96. Here, the allegation that the Defendants improperly collected a sum of $ 25 per quarter from each Plaintiff's trust account, which in turn was credited against a debt that it is undisputed the Plaintiffs actually owed, simply does not rise to the level of cruel and unusual punishment. Thus, the Court turns its analysis to the claim premised upon the 5th Amendment.

The 5th Amendment provides that a person may not be deprived of property without due process. The Defendants argue that *Bivens* does not provide for a remedy for property deprivations, citing *Wilkie v. Robbins*, 551 U.S. 537, 549-50 (2007). In *Wilkie*, the Supreme Court expressed reluctance to stretch *Bivens* to create remedies for constitutional violations beyond those traditionally allowed – *i.e.* 4th Amendment violations, employment discrimination, and 8th Amendment violations. *Id*. It explained that "any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest." *Id.* The Court engaged in a two-step procedure to determine whether a *Bivens* remedy lies for particular federal conduct: first, the court examines "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages"; and second, the courts "must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.*

*Wilkie* involved a landowner who, after revoking an easement over the property that

federal officials desired, found himself a subject of an alleged campaign of retaliation, including acts of trespass, citations for minor infractions, and various other acts of harassment and intimidation. In finding that *Bivens* did not grant the landowner a mechanism to obtain relief, the Supreme Court was persuaded that the landowner had existing remedies for most of the actions against him (*e.g.* suits for malicious prosecution or trespass, Administrative hearings to contest improper citations). *Id.* at 551-53. Moreover, it was convinced that, balancing the landowner's interest in a single, unified remedy for the variety of actions against him versus the societal interest in clearly defining a workable cause of action, the indistinct contours of the claim made affording *Bivens* relief inappropriate. *Id.* at 554-61. Thus, the Court found that the landowner could not assert a *Bivens* claim in such circumstances.

Applying *Wilkie* to the facts of this case, the Court begins with *Wilkie*'s second analytical step, finding that, unlike that case, the contours of this dispute are sufficiently clear that one could readily describe and circumscribe the scope of the *Bivens* claim: the Plaintiffs assert little more than the fact that the BOP took money from their trust account and disbursed it without legal authorization. It would take little judicial effort to determine when cases fell within this paradigm and when they did not. However, moving on to *Wilkie*'s first step introduces concerns. The Defendants contend, and the Plaintiffs apparently do not dispute, that there are existing remedies that the Plaintiffs could invoke to remedy the allegedly improper collection of their money. The Defendants contend that the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (granting the district courts jurisdiction over "Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon the Constitution"), is one remedy that might be available to the Plaintiffs, and, arguably the Federal Tort Claims Act, 28 U.S.C. § 1346(b)

(district courts have jurisdiction over "civil actions on claims against the United States, for money damages . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government"), is another potential source of relief.[4]  Without an argument from the Plaintiff that these Acts fail to provide an adequate remedy, such that a *Bivens* suit is the only real means of obtaining relief, the Court is compelled to agree with the Defendants that, in the circumstances presented here, cases such as *Wilkie* suggest that a *Bivens* remedy should not be afforded.

Even assuming that *Bivens* did provide a vehicle for the Plaintiffs to assert 5th Amendment claims under these circumstances, the Court would nevertheless find that the undisputed facts show that no constitutional violation occurred.  It is undisputed that participation in the IFRP is voluntary – at least in the sense that one may choose to "volunteer" for it in order to avoid losing valuable privileges.[5]  *See U.S. v. Boyd*, 608 F.3d 331, 334 (7th Cir, 2010) (describing program as "voluntary" and noting that "an inmate in the Bureau of Prisons' custody may lose certain privileges by not participating in the IFRP, but the inmate's participation cannot be compelled").  And it is undisputed that both Plaintiffs "voluntarily,"

---

[4]A BOP response to a grievance by Mr. Bradshaw advises him that "If you wish to seek monetary reimbursement, you may do so through the Federal Tort Claims Act."

[5]The Plaintiffs contend that they were "coerced" into agreeing to participate in the IFRP. Beyond that conclusory assertion, they offer no particular analysis as to why the provisions of 28 C.F.R. § 545.11 or BOP Program Statement 5380.08 constitute "coercion."  Neither side has attempted to grapple with the difficult question of where permissible "incentives" to participate in the IFRP end and "coercion" begins, and, as discussed below, this Court declines to definitively mark such a line.  It is sufficient for purposes of the claims relating to actual deductions from the Plaintiffs' trust accounts to observe that, even if the Plaintiffs are correct and their participation in the IFRP was coerced, the analysis discussed below would nevertheless yield the same conclusion that the Court reaches.

albeit reluctantly, entered into written agreements to participate in the program in early 2007.

Once they did so, the BOP was expressly authorized by the Plaintiffs to begin deducting the $ 25

from their trust accounts each quarter, and they cannot contend that such "takings" occurred

without their permission, much less without due process of law.[6]

*Overholt* does not compel a different conclusion. First, and most importantly, the rule in

*Overholt* is one that dictates the conduct of <u>sentencing courts</u>. According to *Overholt*, the failure

of the sentencing court to include a specific restitution schedule as a component of the sentence

is "plain error," warranting a remand for re-sentencing. 307 F.3d at 1256. Other than

acknowledging that the sentencing court cannot delegate the duty of fixing a payment schedule

to the BOP, nothing in *Overholt* mentions, much less purports to rule upon, the manner in which

the BOP implements the IFRP.

---

[6]The record reflects that Mr. Bradshaw signed an agreement to participate in the IFRP in January 2007. From March to September 2007, the BOP placed Mr. Bradshaw on "no obligation" status, while it attempted to ascertain the intent of the sentencing court with respect to his restitution obligation. In September 2007, after obtaining unspecified "clarification" from the sentencing court, the BOP concluded that Mr. Bradshaw should resume participation in the IFRP. Several written program review statements document Mr. Bradshaw's ongoing $25/quarter IFRP payments during and after 2007, and Mr. Bradshaw has signed each of these program review statements.

By contrast, Mr. Bradshaw contends that the BOP's placement of him on "no obligation" status "logically voids the validity of the [January 2007] coerced inmate financial plan," and states that he did not thereafter sign a new IFRP agreement. Thus, he contends, the BOP's collection of the quarterly payments since September 2007 have been unauthorized. Mr. Bradshaw offers no support for the proposition that his temporary placement on "no obligation" status "voids" his agreement to participate in the plan, and the Court declines to accept this conclusory assertion in the absence of evidence – *e.g.* a provision in the BOP's IFRP policies explaining when IFRP agreements become "void" or a written or oral statement by Mr. Bradshaw expressing his intention to withdraw from the program prior to September 2007 – that would show that either the BOP or Mr. Bradshaw expressly terminated the January 2007 IFRP agreement. Accordingly, the Court rejects Mr. Bradshaw's contention that the BOP's deductions from his trust account beginning in September 2007 and continuing to date are unapproved by him.

The 10th Circuit's opinion reversing the earlier dismissal of this case offers only minimal elaboration on the issue. In *Bradshaw*, the court took issue with the prior dismissal's conclusion that, because other circuits had found the IFRP constitutional, the Plaintiffs' claims could be dismissed as frivolous. The 10th Circuit agreed that it was error for this Court to rely on other circuits' precedent instead of *Overholt*, and noted in passing that "it seems problematic to conclude that the BOP may assume for itself a responsibility that the district court is not permitted to delegate to it." 320 Fed.Appx. at 848-49. However, beyond that casual observation, the 10th Circuit clearly indicated that it "reach[ed] no conclusions about the ultimate merit of this case," other than that "the district court's dismissal of the action as legally frivolous based on [other circuits'] authority was erroneous." *Id.* at 849. This Court understands *Bradshaw* to caution against casual and hasty dismissal of the Plaintiffs' claims without due consideration of the rule and effect of *Overholt*, and to express an off-the-cuff concern as to how the BOP can enforce the IFRP in light of the rule that sentencing courts, not the BOP, can set restitution schedules. But beyond noting the concern, the court in *Bradshaw* did not purport to explore the matter further, much less assess its concern in light of the particular facts of this case. Mindful of the 10th Circuit's instruction in *Bradshaw* to avoid hasty conclusions about the merits of the IFRP claims here, this Court takes a moment to consider whether, and how, the IFRP can coexist with a sentencing court's failure to direct a specific restitution schedule.

The key fact supporting the BOP's ability to apply the IFRP in cases such as this one, where – arguably – the sentencing court did not dictate a restitution schedule, arises out of the voluntary nature of the IFRP. *Overholt* teaches that the sentencing court cannot delegate the authority to fix a restitution schedule to the BOP, and thus, in the absence of the sentencing court

setting such a schedule (as may be the case here), the Court simply assumes that an inmate is not under any obligation to make restitution <u>according to any particular schedule</u>. But the fact remains that a restitution order without a court-ordered schedule is nevertheless a financial <u>obligation</u> that an inmate eventually must satisfy. There is nothing wrong with the BOP "encourag[ing] each sentenced inmate to meet his or her legitimate financial obligations" by means of voluntary payments, even though such payments are not otherwise compelled by a schedule that the sentencing court imposed. 28 C.F.R. § 545.10. In this respect, the IFRP serves two functions: as to inmates under a court-ordered restitution schedule, the IFRP operates to ensure that the schedule is complied with; as to inmates without a court-ordered restitution schedule, the IFRP encourages the inmates to <u>voluntarily</u> begin making restitution payments as a demonstration of their willingness to accept responsibility.[7] Nothing in *Overholt*, 18 U.S.C. § 3664(f)(2), or any other authority suggests that the BOP should not offer assistance and incentives to those inmates who wish to evidence their financial and social responsibility by "getting a jump" on restitution payments that are not yet due, and thus, there is no inherent conflict between the IFRP and an inmate who elects to participate therein even though no court-ordered restitution schedule so requires.

Thus, because the undisputed facts in the record establish that, as of early 2007, the Plaintiffs voluntarily authorized the Defendants to make $ 25 quarterly deductions from their trust accounts, the Defendants are entitled to summary judgment on the Plaintiffs' claims that

---

[7]*See e.g.* BOP Program Statement 5380.08(8)(5)(a) ("Absent direction from the court when an obligation should be collected, payments <u>may</u> begin during an inmate's incarceration." (Emphasis added.) The Court construes the highlighted term to the be permissive "may," indicating that an inmate can volunteer to make restitution payments during incarceration, even though his sentence does not require it.

allege some constitutional violation arising out of such deductions.

               b. <u>"Refusal" status</u>

The Plaintiffs' second set of IFRP claims contend that, from mid-2006 to early-2007, they refused to participate in the IFRP and were placed on "refusal" status. Pursuant to 28 C.F.R. §545.11(d), "refusal" status resulted in the loss of a variety of privileges, including assignment to less-desirable housing units, limitations on canteen purchases, etc. In addition, the Plaintiffs contend that such status prevented them from participating in the "step down" unit at ADX, and while there is somewhat conflicting evidence in the record as to whether refusal status is an absolute bar to "step down" participation or simply one factor that is weighed in assessing an inmate's suitability for the "step down" program, the Court finds that the Defendants concede that in an October 13, 2006 grievance response, Defendant Wiley acknowledged that refusal status will prevent an inmate from participating in the "step down program."

As discussed above, with regard to inmates without court-specified restitution schedules, IFRP avoids conflict with 18 U.S.C. § 3664(f)(2) so long as the inmate's participation in the IFRP is voluntary. Conflict with the statute, if at all, would occur only if the BOP were to <u>compel</u> an inmate without a current restitution schedule to participate in the IFRP. If, for example, an inmate without a court-imposed restitution schedule declined to participate in the IFRP – *i.e.* an inmate who declined to <u>volunteer</u> to begin paying off an as-yet-unripe restitution obligation – and received some form of punishment as a result, some form of claim might lie. In such circumstances, the compulsion converts the BOP's actions from benignly assisting an inmate to voluntarily demonstrate his rehabilitation to the BOP usurping the court's authority to require restitution on a particular schedule, in violation of *Overholt*.

The Court has chosen its words in the penultimate sentence of the above paragraph –

"some form of claim might lie" – with care.  It is not immediately apparent to the Court what

constitutional provision, if any, might be implicated in such a situation.   Because the thrust of

many of the privileges withheld from those on refusal status under 28 C.F.R. § 545.11(d) relate

to the conditions of confinement, one might contend that the 8th Amendment's "cruel and

unusual punishment" clause is implicated, or perhaps that inmates improperly placed on refusal

status are deprived of liberty interests without due process – either substantive or procedural – in

violation of the 5th Amendment.  Both of these lines of reasoning are problematic.  As mentioned

above, the 8th Amendment's application to conditions of confinement generally operates to

protect inmates against conditions so substandard that they pose a safety or health risk to the

inmate.  *Craig*,164 F.3d at 495-96.  The privileges withheld from refusal status inmates, while

certainly desirable, are simply too peripheral to matters of inmate health and safety to give rise to

8th Amendment concerns.  Likewise, while the 5th Amendment protects inmates against

deprivations of liberty interests without due process, Supreme Court precedent makes clear that

"liberty" interests do not arise simply because the inmate is exposed to more adverse conditions

of confinement.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005), *citing Meachum v. Fano*, 427

U.S. 215 (1976).  Rather, a liberty interest protected by the due process clause arises only when

the deprivation of privileges amounts to an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life."  *Id.* at 223.  This high standard will be difficult

for most inmates to meet – the privileges that are withdrawn from inmates on IFRP refusal status

are fairly limited and benign, and even assuming that the loss of access to the "step down"

program is among those things withheld from ADX inmates, the 10th Circuit has found that

removal of an inmate already <u>in</u> the "step down" program to a more restrictive unit does not give rise to a liberty interest. *Muhammad v. Hood*, 100 Fed.Appx. 782, 783 (10th Cir. 2004) (unpublished); *see also Duronio v. Gonzales*, 293 Fed.Appx. 155, 157 (3d Cir. 2008) (unpublished) (privileges revoked because of IFRP refusal status do not give rise to liberty interest). Indeed, the 10th Circuit has recognized as much. *Davis v. Wiley*, 260 Fed.Appx. 66, 68-69 (10th Cir. 2008) (unpublished) (in *habeas* case brought under 28 U.S.C. § 2241, affirming constitutionality of IFRP and noting that "the benefits that can be denied [as a result of refusal status] are not constitutionally guaranteed" and that "mere inducements – such as the BOP's threat to alter Davis' place of confinement – without more, do not infringe on a prisoner's protected liberty interest").

Simply put, it is by no means clear how – or even if – an inmate's constitutional rights would be implicated by being improperly placed on IFRP "refusal" status. The inability of the Court to define the contours of the right, if any there be, makes it clear that even if the Plaintiffs are correct that their placement on refusal status from mid-2006 to early-2007 violated some constitutional right, that particular right was not so "clearly established" that the Defendants could be expected to know that their conduct violated the constitution. As a result, the Defendants are entitled to qualified immunity on this portion of the Plaintiffs' IFRP claims.

The doctrine of qualified immunity limits the liability of governmental actors for damages for constitutional deprivations to situations where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004), *citing Saucier v. Katz*, 533 U.S. 194 (2001). This requirement is embodied in the "clearly established" prong of the qualified immunity analysis, which requires the party

asserting the claim – here, the Plaintiffs – to show that precedent existing at the time of the events at issue "clearly established" that the governmental actor's conduct violated the constitution in the particular circumstances presented. *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1200 (10th Cir. 2009). It is not essential that earlier cases present precisely the same set of facts, but the prior cases must be sufficiently analogous to the present circumstances that it would be "apparent" to the official that the conduct in question would violate the constitution. *Id.*

Here, the Plaintiffs have not identified any authority that clearly establishes that a prison officials' compulsion that an inmate improperly participate in the IFRP when no court-ordered restitution schedule directs such participation, violates the constitution, giving rise to a damages remedy. This Court's own research has turned up no case addressing this or a comparable set of facts. To begin with, not all circuits follow the rule in *Overholt;* many circuits allow the sentencing court to defer the setting of restitution payment schedules to the BOP, and in such circumstances, the inmate's participation in the program is never "improper." *See U.S. v. Kyles*, 601 F.3d 78, 87 n. 1 (2d Cir. 2010) (identifying circuits allowing BOP to set restitution schedule). The Court has located only a handful of cases that present a similar factual scenario to this case, and none clearly recognize any constitutional claim for damages that can be asserted by the inmate. *See U.S. v. Himmelreich*, 363 Fed.Appx. 175, 176 (3d Cir. 2010) (unpublished) (affirming denial of preliminary injunction to inmate who claimed he was improperly compelled to participate in IFRP; court found that facts showed inmate's sentence directed that restitution begin "immediately"); *Duronio,* 293 Fed.Appx. at 156-57 (dismissing *Bivens* claim of inmate claiming to have been coerced into IFRP, finding that inmate failed to demonstrate loss of liberty

interest as a result of such coercion); *Davis*, 260 Fed.Appx. at 69 (finding no constitutional liberty interest implicated by refusal status). Because the Court finds that the constitutional right of inmates to avoid coercion into participation in the IFRP was not "clearly established" at the time of the events herein (much less that it exists at all), the Defendants are entitled to qualified immunity on the Plaintiffs' claim for damages against them.

That leaves only the Plaintiffs' claims for prospective injunctive relief. The Court finds that such claims are premature. The undisputed evidence in the record establishes that, at present, both Plaintiffs are "voluntarily" paying $ 25 per quarter towards their restitution obligations under the IFRP. Put differently, notwithstanding the claims in this action, there is no evidence that either Plaintiff has expressly advised the BOP that he wishes to withdraw his consent to participate in the IFRP program.[8] So long as the Plaintiffs remain participants in the IFRP program, a request for injunctive relief preventing the BOP from placing them on refusal status should they choose to discontinue participation is a request for an improper advisory opinion. Unless and until the Plaintiffs actually withdraw from the IFRP and are placed on refusal status, this Court cannot enjoin the BOP from placing them on such status.

Accordingly, the Court finds that the Defendants are entitled to judgment as a matter of law on all of the Plaintiffs' IFRP-related claims.[9]

---

[8]Such a decision carries some risk. Undoubtedly, the decision to do so will result in the BOP declaring the inmate to be on refusal status and the inmate will lose various privileges as a result. And cases such as *Davis* suggest that the 10th Circuit may not be particularly receptive to a claim that "coerced" participation in the IFRP constitutes a constitutional deprivation, meaning that the Plaintiffs will have foregone the privileges and access to the "step down" program for nothing.

[9]The granting of judgment to the Defendants on the IFRP claims has a number of collateral consequences. It entitles those Defendants – Collins, Sudlow, Knox, Madison, Foster,

### E.  Dismissal of Defendant Leyba

Finally, the Court turns to Mr. Bradshaw's Objections **(# 253)** to the June 30, 2010 Recommendation **(# 247)** of the Magistrate Judge that the claims against Defendant Leyba be dismissed without prejudice for failure to effect service.

The Recommendation notes that on July 13, 2009, the United States Marshal reported that it was unable to effect service on Defendant Leyba because he had left the employ of the BOP.  On September 28, 2009, the Magistrate Judge directed the Defendants to disclose Mr. Leyba's last known address under seal, and the Defendants did so.  The Marshal attempted service at that address, but reported that the house was vacant.  The Magistrate Judge denied a subsequent request by the Plaintiffs to compel the Defendants to search the internet for a valid address for Mr. Leyba, noting that the burden of locating a Defendant is borne by the Plaintiffs, not the Defendants.  The Magistrate Judge also denied a request by the Plaintiffs to effect service upon Mr. Leyba at an address at which he was served in another lawsuit, noting that that lawsuit had occurred two years earlier and there was no reason to assume that Mr. Leyba was still at that address.  The Magistrate Judge then ordered the Plaintiffs to show cause why Mr. Leyba should not be dismissed from this action for failure to effect service, and advised the Plaintiffs that the failure to make such a showing would result in a Recommendation that Mr. Leyba be dismissed without prejudice.  The Plaintiffs responded to that Order by requesting that Mr. Leyba be served at the address that had previously been provided by the Defendants and at which prior attempts

---

and Finlan – who are named only with regard to the IFRP claims to dismissal from the remainder of this suit.  It also renders moot certain motions by the Plaintiffs **(# 232, 233, 243, 263, 265)** that relate to service of process on Defendant Knox.  Finally, because Plaintiff Tuttamore asserts only IFRP-related claims in the Amended Complaint, it warrants dismissal of Mr. Tuttamore from the remainder of this suit, which will proceed on Mr. Bradshaw's medical claims only.

at service were unsuccessful.  Thus, the Magistrate Judge recommended that the claims against Mr. Leyba be dismissed without prejudice pursuant to D.C. Colo. L. Civ. R. 41.1.

Mr. Bradshaw filed a timely Objection **(# 253)** to the Recommendation, arguing: (i) dismissal without prejudice would nevertheless prevent Mr. Bradshaw from recommencing a claim against Mr. Leyba, as the statute of limitations has run; (ii) the 10th Circuit's order in *Bradshaw* specifically indicated that the Court should consider the statute of limitations when entertaining dismissal; (iii) but for the prior judge's improper dismissal of this action, Mr. Leyba would have been served while he remained employed by the BOP; (iv) the Magistrate Judge's denial of the request that the "Defendants or Marshals" search the internet to locate Mr. Leyba was "unfair, given [Mr. Bradshaw's] *in forma pauperis* status and reliance on the Marshal" and that the Court should grant that request now, "in the interest of justice"; (v) that the court should obtain Mr. Leyba's address from the other action, because "the U.S. Attorney's Office likely knew [Mr.] Leyba's whereabouts up until 7/7/09 when the case was dismissed"; and (vi) that Mr. Bradshaw "h[as] done all [he] can" to locate Mr. Leyba and the Court should require an internet search, consult the records of the prior case, and grant Mr. Bradshaw an additional 120 days to find Mr. Leyba.

When a party files timely Objections to a Magistrate Judge's Recommendation under Fed. R. Civ. P. 72(b), the Court reviews the objected-to issues *de novo*.

Upon *de novo* review, the Court agrees with the Magistrate Judge that dismissal of the claims against Mr. Leyba without prejudice is appropriate.  It is undisputed that nearly 3 years have passed since this case was commenced, and more than 14 months have passed since the case was remanded for further proceedings by the 10th Circuit, yet Mr. Bradshaw is still unable

to locate Mr. Leyba. Although he requests additional time to locate Mr. Leyba, Mr. Bradshaw gives no indication that he has any leads to pursue as to Mr. Leyba's whereabouts or otherwise has reason to believe that, but for a grant of additional time, Mr. Leyba could be located and served. The Court finds that, by requiring the Defendants to disclose their knowledge as to Mr. Leyba's last known address, the Court has provided Mr. Bradshaw all of the assistance that can be made available to him. Although Mr. Bradshaw is incarcerated and proceeding *pro se* and *in forma pauperis*, none of those characteristics entitle him to have the Court or opposing counsel assume the ordinary responsibilities that are imposed on every other plaintiff. To the extent that Mr. Bradshaw cannot investigate Mr. Leyba's location via internet, court files, or public records searches himself because of his status, he has certainly been capable of requesting that an unincarcerated friend or relative conduct such a search for him.[10] Thus, the Court finds that there is no basis to believe that, given additional time, Mr. Bradshaw is likely to be able to locate and effect service upon Mr. Leyba. In light of that fact, the remaining arguments by Mr. Bradshaw in his Objections are irrelevant. Accordingly, the Court overrules Mr. Bradshaw's Objections, adopts the Recommendation, and dismisses the claims against Mr. Leyba without prejudice.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion to Consolidate Cases **(# 140)** is **GRANTED**. The case of *Bradshaw v. Leyba*, D.C. Colo. Civ. Case No. 08-cv-02542-PAB-KLM is **CONSOLIDATED** into this action. Because the claims in that action are identical to those asserted here, the Clerk of the Court shall close that case. The Court **ADOPTS** the

---

[10]The Court notes that a search on www.whitepages.com for "Lawrence Leyba," the name given in the Defendants' sealed filing **(# 132)** containing Mr. Leyba's last known address, returns 0 results.

Magistrate Judge's May 17, 2010 Recommendation (**# 203**) and the Plaintiffs' Motion for Entry of Default (**# 152,** as supplemented **# 180, 181**) are **DENIED**. The Plaintiffs' Motion for Summary Judgment (**# 172**) is **GRANTED IN PART**, insofar as the Court finds that there is no genuine dispute of material fact requiring trial with regard to the Plaintiffs' IFRP claims, and **DENIED IN PART**, insofar as the Court finds that Defendants Collins, Sudlow, Knox, Madison, Foster, and Finlan are entitled to judgment against the Plaintiffs on all claims asserted against them in the Amended Complaint. The caption of this case is **AMENDED** to omit these Defendants and to omit Mr. Tuttamore as a Plaintiff. The Plaintiffs' Objections (**# 253**) to the Magistrate Judge's June 30, 2010 Recommendation (**# 247**) are **OVERRULED** and the Court **ADOPTS** that Recommendation. The claims against Defendant Leyba are **DISMISSED** without prejudice for failure to effect timely service pursuant to Fed. R. Civ. P. 4(m) and D.C. Colo. L. Civ. R. 41.1. The caption of this case shall is **AMENDED** to omit Mr. Leyba. The motions at **Docket # 232, 233, 243, 263,** and **265** are **DENIED AS MOOT**. Mr. Tuttamore's Motion to Withdraw (**# 277**) is **GRANTED**, and the motion at **Docket # 226** is **DEEMED WITHDRAWN**. Pursuant to the Order at Docket # 86 in Case No. 08-cv-02546, the remaining claims against Defendants Lappin and Wiley are **DISMISSED**, and the caption of this case is **AMENDED** to omit Mr. Lappin and Mr. Wiley. The Court finding that there is no just reason for delay in entering judgment in favor of the Defendants mentioned herein pursuant to Fed. R.

Civ. P. 54(b), the Clerk of the Court shall promptly enter judgment in favor of the Defendants listed in this paragraph and against the Plaintiffs.

Dated this 7th day of September, 2010

BY THE COURT:

Marcia S. Krieger
United States District Judge